Good morning, Your Honors. David Grace of Loeb & Loeb representing 99 Cent Only Stores. This case raises important issues with respect to the duty of district court judges to honor the requirements of Rules 68 and 65D. The result in this case could have a tremendous impact on whether a reasonable defendant in an intellectual property case can induce an overly aggressive plaintiff to accept a fair settlement. You know what, I just don't understand the premise, because a Rule 68 offer of judgment is up to the crafter. In here, the crafter put in language that plainly allowed the district judge to exercise discretion with respect to the terms of the injunction. Now, I've never seen a Rule 68 offer with that term in it, so I can't imagine that it would have a very widespread impact beyond this particular case. Well, Your Honor, in this case... In fact, I'm not even sure it's a Rule 68 offer, because Rule 68 offers are normally saying, you know, judgment can be entered against me for $10,999.99, without any kinds of other things to be decided. Well, Your Honor, I understand your point on that, and perhaps Rule 68 shouldn't apply to offers of injunctive relief. But other circuit court cases have recognized the applicability of Rule 68 when it includes, when an offer includes an offer of injunctive relief. And other circuit court cases have said that when an offer includes an offer of injunctive relief... And the judgment offer could have done that, couldn't it? I mean, it could have said, we offer to have judgment entered against us as follows, quote, and quoted it. That's true, Your Honor. It could have done that, and you can always do something better when you're, in this particular case, I came into the case late, and we were running up against a trial date that had been set very short by the trial judge, and things were happening very quickly. And the question is, in this case, the trial judge, based upon an offer that reads... Your key is the very last phrase. You're saying that the discretion extended to permanently enjoining the defendant from further sale or distribution of the allegedly infringing products, which was a limited... That's correct, Your Honor. That's correct, Your Honor. That's correct, Your Honor. That's correct, Your Honor. Well, I think he had... Well, first of all, if you look at the proposed injunctions submitted by the parties, all of them are by definition longer than this one paragraph. They contain an identification of the parties, an identification of the case, the factual basis under Rule 65d for an injunction, which is the parties have agreed to the injunction, and there's consent, and it's limited to specific products, and so he has to craft all those things. It's still a short injunction, but the injunction we submitted is about two pages long, containing a variety of additional terms, which in a normal case, the parties wouldn't necessarily disagree about, but in this case, I felt we were dealing with a very overly aggressive and unreasonable plaintiff, and that I didn't want to get into a lot of arguments about whether inconsequential provisions were enough to make the offer invalid. So what we tried to do was we set forth the key deal points of the offer, which was $15,000, covering everything, including costs, attorneys' fees, and everything else to get out of the way of those other Rule 68 cases, and an injunction with respect to the allegedly infringing products, and any clarifications beyond that or any other details that needed to be left, the trial court was free to add. Kagan. Maybe it would be helpful. You know, I must have seen, well, probably not a hundred, but certainly dozens of injunctions in my life in copyright or trademark infringement suits, and they all look about like this, almost exactly like it. I mean, I could have practically dictated it. Say for perhaps one phrase, which is in I-2D, and it is, are sponsored or endorsed by Mattel, or authorized by Mattel, or, and that phrase strikes me as being somewhat broader than just an injunction to stop using the products that infringe the Mattel action toy or the thumbs-up logo or the trade dressing or packaging on those products. Except possibly for that phrase, what's remarkable about the actual injunction that you're faced with? Well, Your Honor, first of all, in the factual context, this was a lawsuit that was filed against a retailer after they had sold all the products. I understand it's making a mountain out of a molehill from your point of view. I get that. Okay. But the point is, what is, what's the real, honest to God, real-world problem with the injunction? Okay. Let me try to address that. First of all, the injunction contains two paragraphs in which the judge says that acknowledges the validity and ownership of various rights of Mattel, including trade dress and copyright in packaging the products shown in exhibits that are 50 pages long. For the life of me to this day, I have no idea what the claim trade dress of Mattel was. But the thing is, if you don't acknowledge that, then what, of what value is the agreement to avoid infringing them? I mean, they put the exhibits in so that you know what it is that you can't infringe. And as I read the background, in fact, you kind of, or your client, had at some point asked for pictures so that you'd know exactly what it is that you're infringing. Well, Your Honor, we asked for pictures because we could not discern what the trade dress and copyrights that were theoretically infringed consisted of. And we were trying to clarify what the injunction were. And during that period of time, there were quite a few different settlement proposals. I was taking the position there shouldn't be an injunction at all. This was a customer of Mattel. This was a de minimis amount of product by a company that had no involvement in its development. They were saying they wanted a really onerous injunction. We made a variety of different proposals. And in the end, we decided because it came to an impasse, we sent an offer that said, okay, you can have an injunction that prohibits further sale and distribution of the allegedly infringing products. Which, from my point of view, is if the case had gone to trial and was a disputed issue with respect to whether an injunction was appropriate, they shouldn't have gotten an injunction at all. But if they were going to get any injunction, it would be don't do that again. Not, don't ever violate any rights with respect to this whole product line that takes 50 pages to depict. Don't violate any of these very vague trademark rights of, you know, super action, thumbs up. Don't. Well, but that's what the complaint was about. Pardon? I mean, that is what the complaint is about. Well, the complaint discusses all those issues, but the complaint contains a number of causes of action that were just flat right frivolous. They sued us for trademark counterfeiting based on unregistered marks. You can't, that's no such cause of action. I understand that. This was a small case in which the plaintiffs over-litigated the case. They had a big, huge complaint about a little, tiny matter. And then the judge basically came in and if he's going to exercise his discretion, pursuant to that, if you're going to ignore the limitation and read it right out of the offer, there's no mention of the allegedly infringing products in the injunction, no factual finding that this is an ambiguous offer. If you are going to say this is an ambiguous offer and, therefore, I'm going to go beyond the language of it, then we get into Cali and we need to have an evidentiary hearing and findings of fact. There's no findings of fact in this case. There was no evidentiary hearing. Ginsburg. Counsel, to get you back to what the original question was, which was what in the injunction do you object to? You object to the part which says that you concede that these products are trademarked or licensed. What else do you object to? Well, the most egregious aspects of the injunction are the findings that we acknowledge the validity of things that I don't even know what they are. Because Rule 68, the cases are Rule 68 offer is an offer. Can you just identify? Okay. You object to that. Do you object to anything else? Well, yes, Your Honor. We basically object to the whole thing. I mean, if you want me to pick out the worst parts of it. But, overall, the worst part of it is it's a 57-page injunction that basically gives Mattel the right to track. Well, it's about a four- or five-page injunction with a lot of pictures, most of which you wanted. You know, saying it's 57 pages doesn't, you know, we're not here to add up things. Could you just tell us what language in the injunction is the problem? Your Honor, I understand it. But part of my frustration is you're saying we wanted it. There was no evidentiary finding. We wanted something like this. The parts that are the most egregious are the findings that we acknowledge the validity of disputed rights, which we did not acknowledge those, and most of those were not at issue in the case. In other words, you're talking about paragraphs E and F under it. Right. That's right, Your Honor. Okay. Paragraphs E and F. And then the most egregious provision is the one that Judge Reimer identified, which is the one that prohibits the sale of any disputed property. Okay. What would happen if we struck out in Part I, 2d, if you've got it there? What would happen if we just struck out the phrase, are sponsored or endorsed by Mattel or authorized by Mattel, so that the whole phrase would be likely to cause confusion, that are with goods connected in some way with Mattel's trademarks, max deal, max deal, super action and thumbs up? That would be a vast improvement over where we are, Your Honor. Okay. But going back to the more core issue. Would my discretion be properly exercised in doing that? You have the right to a de novo review, and you have the right to instruct the trial judge to enter an injunction on the terms offered by the plaintiff. I represent the plaintiff. I don't think that goes far enough to meet the terms offered by the plaintiff, but I think the answer is yes, that would help, and yes, I think you can do that. Okay. But I think the issue here is that everyone wants to just completely ignore the operative key phrase with respect to the scope of the injunction and treat it as though it doesn't exist. Mattel's point of view is this was a roll of the dice. You said judge's discretion, therefore the judge can do whatever he wants. And there's other cases, the Guermo case and other cases in which the Ninth Circuit has rejected that argument and said, just because there's a provision that provides for some exercise of discretion by the trial judge, doesn't mean the judge can ignore the operative provisions of the agreement. And when you apply California laws of construction to this, you have to go through and harmonize the provisions and say, what role does each provision have? So if he has complete discretion to do whatever he wants, then the last phrase has no provision. It's being read right out of the contract. Can I ask you a totally different question? I take it that no Rule 60B motion was made. No, Your Honor, we did not make a Rule 60B motion. Because there's a lot of sprinkling through some of the cases is the notion that Rule 60B is the proper way to challenge Rule 68 judgment. So you didn't give the district court, you didn't make this pitch to the district court. We did not think it would be helpful to go back before Judge Wilson with a Rule 60B motion. And, Your Honor, I know you can do that when the judge makes a mistake. But in this case, there was no evidentiary hearing. There are no findings of fact supporting the injunction. He just signed what Mattel put in front of him. He didn't – I mean, the first part of the argument is it's clear on his face that the operative phrase is what the operative phrase is. The second part of it is if there was going to be a dispute about what the settlement agreement was supposed to be, and people have long lawsuits with two months of trials over the meaning of a word and whether something's capitalized or not. If there was going to be a dispute, then the judge should have at least given us the opportunity to have an evidentiary hearing, to at least have a hearing for him to talk about what it meant. Because there was no hearing. There was just two simultaneous briefs. And he had to make factual findings. Did you ever ask for a hearing? No, we never had a hearing, Your Honor. He went and at the pre-trial conference when informed that there – The answer to my question would be no. We never asked for a hearing. No. Oh. Yes, we did ask for a hearing, Your Honor. In our opposition to their – we made three points, pretty much the same three points we're making now, that it's plain on its face that Mattel's argument that it's ambiguous should be rejected and they should not be able to introduce evidence about the prior settlement negotiations. But if they are going to do that, we want an evidentiary hearing and the opportunity to cross-examine their witnesses. That was the second point in our – in the brief we filed. And then the third point was our same third point here, which is their proposed injunction violates every one of the requirements of Rule 65B. It's not – there's no findings supporting the scope of the injunction. It's not specific to a specific threat and harm. And it doesn't describe in reasonable detail what the prohibited conduct is supposed to be. We're talking about a retailer, which is a billion-dollar business. I thought the problem wasn't described in too great detail. I know people get away with getting defendants to sign things like this all the time. That doesn't make it right in the context of a dispute that was all about whether there was going to be an injunction in the future. My client's a billion-dollar company on the New York Stock Exchange, and it didn't want to roll over and just acquiesce to what an unreasonable plaintiff wanted to do. So we have a case with a wealthy, overly aggressive plaintiff, and a retailer has the resources to say, look, if you're going to shove this down my throat, I'm at least entitled to what the rules require. And the rules, I think, require the judge to give force to each part of the Rule 68 offer, including the part that specified the scope of the injunction, and including his obligation, which judicial discretion is not whatever you want to do. Judicial discretion is pursuant to the rules of civil procedure, which under the other cases, if you're going to have an injunction without the consent of the other party, it has to satisfy those three requirements. You wrote a letter, or someone wrote a letter, which said that the judge would determine the scope of the injunction. I think that was in-house counsel for 99 cents, and that was there was one of the proposals at the time was let's just present a joint report or otherwise present everything to the judge and let the judge decide what's appropriate. But that was in one of the other types of procedures. That didn't happen in this case. We did not do stipulation. We stipulated facts and presented to the court with a joint report about arguments of what the judge should or shouldn't do. We had a much different procedure in which we had a Rule 68 offer. They submitted a proposed judgment. We showed up. The judge said you could each exchange simultaneous briefs on what it means, and then we ended up with a 57-page, seven pages plus 50 pages of exhibits. However you want to look at it, it's a thick piece of paper for a corporation to have to put into its mentality and try to remember forever. And based upon $9,000 of little toy soldiers, I think it's completely inappropriate. I'm going to take my last three minutes to rebuttal. Thank you. Thank you, Mr. Graves. Good morning, Your Honor. Jill Petrini for Appelli, Mattel. May it please the Court. First, I'd like to address the appealability of a Rule 68 offer that has been accepted. And there's some – there seems to be sort of a semantics situation in the cases that I've read, whether it's a jurisdictional issue or it's a waiver of error. And either way, this – we shouldn't be before you because our position is that by agreeing to the offer and not reserving a right of appeal, then 99 Cent Store has, in fact, waived any claimed errors in the injunction. Doesn't that presume the answer? I mean, their position is they didn't consent to the entry of this judgment. Well, what it boils down to is they don't like the one that Judge Wilson chose. We presented two. Well, let's pretend it was more clear. Let's say they agreed to pay $10,000 and the district court said, gee, I think it's worth 15, and put that in. Would they be precluded from appealing that? Then you would – then they would have to file a Rule 60 motion on mistake and error, and then the right of appeal would attach there. Because then you're talking about effectively almost a typographical error. No, no. Mine is hypothetical. The judge just didn't like it. So she did something different. Is that a consented judgment? Or is that some other kind of judgment that a person can appeal from within the normal 30 days?  Because here, the difference here that we're having is that we gave the discretion to the judge because we could not agree. Well, their position is that they gave the judge an inch and he took a mile, that the discretion was to deal with the specifically infringing products, not with a bunch of other products. Well, their position is not supported by the transcript. I mean, it was very clear. I'm looking at the written offer, the last phrase of the written offer, which says that the defendant, permanently enjoining defendant for further sale or distribution of the allegedly infringing products, which are the ones that led to the $15,000. So – I think we would be helped by telling us what it says in the complaint were the alleged infringing products. What were the – Because certainly you couldn't go broader than that. Isn't that right? Well, that's what we knew about at the time that we filed the complaint, that they had these Fox Steel complete knockoff of the MAC Steel products. But the prayer was, we don't want you to sell those or use that mark, Fox Steel, or any other mark that's confusingly similar to MAC Steel. That is very standard in a trademark case that is right in the land of MAC. Well, but the language is the alleged infringing products. And how do you describe those alleged infringing products in your complaint? It's the Fox Steel action figures. But if this is the – Can you give us the language? Yeah. It's Fox Steel action figures. It's on pages 8 and 9 of the complaint. Yes. Maybe just read it to us. Sure. Defendants, at some point prior to the day of the complaint, defendants began manufacturing, marketing, and advertising, selling and distributing an action figure bearing the marks Fox Steel in design, super action in design, and a colorable imitation of the Thumbs Up logo that is nearly an exact copy of the sculpture for MAC Steel Mountain Attack action figure and the packaging, therefore. So why isn't the Rule 68 offer to have a permanent injunction that says, you may never again sell, and then that phrase? Well, you can't look at that Rule 68 offer in a vacuum. 99 Cent Store wants you to do that, and that's just not right. Because what happened was that this was a settlement impasse. We came down to – we had all the terms agreed to, including validity. Everything else is in the injunction that was, in fact, entered by Judge Wilson. And it came down to the words infringe versus substantially similar. And they wanted infringe, and I said, no, you need substantially similar. And then they came with their Rule 68 offer and said, okay, we'll let the judge decide. But you can't just look at the last parts of that 68 offer. You have to look at the terms that says, in the district court's discretion, he's going to fill in the terms. But he can't go beyond the alleged infringing products, can he? Yes, he can. Because that's right in the Lanham Act. And they agreed to that two hours after that offer of judgment was sent. They said, we remain willing and ready to not sell those products or anything confusingly similar to it. That was part of the deal. And they're trying to make this that, oh, it's only the infringing products. Well, you know what? That's just an action figure. If I change it and put it on a box, it probably is. What exactly is the practical difference between, let's say they now sell something that is completely different, that's, I don't know, little combs and brushes that has nothing to do with action figures, but it happens to be, in your view, infringing of a different Mattel product. You can sue them again. So what difference does it make to you as a practical matter whether you sue them again over the hairbrushes or whether you say, ah-ha, you violated the injunction, so now we're going to go in and enforce the injunction? Why? Well, because we have to initiate a whole new action versus a motion for contempt. And we still have to make our proof on the contempt. Well, that's my point exactly. You still have to make the same proof. So why, it seems like on both sides, if I might say so, from my perspective, a mountain out of a molehill. It's very important to us. These were so similar, it was amazing. It was the exact same packaging. They admit that. No, I understand that. But we want to be able to have something that's enforceable. Each time we have to keep suing our customer or suing someone else, if it's within the scope of our prayer of the injunction of what we went after the first time, why should we have to continually place these guys in separate actions? Well, if you've won the litigation after a trial, you might not have to. But the question here is when they cry uncle, what did they cry uncle to is the question, not whether you could have won something broader had you gone all the way through the process. But it wasn't what you're forgetting is everything that happened before. We were all in agreement that it was or confusingly similar or substantially similar. That's what it came down to. That was the dispute that we turned over voluntarily at Mr. Grace's and his client's proposal to have him decide. We agreed on the money. We couldn't agree on the terms and the scope and the definition of the injunctive language. And we turned it over to him. And that is well within the landmark. What do you think of my rewrite? Your rewrite, if you take out that language? Mm-hmm. We could live with that, Your Honor. Okay. Well, that goes a long ways towards solving this whole mess. It's modified. I understand your point. I listened, obviously, in the question of Mr. Grace. I think that phrase is modified by the max deal. It may not be. If you take it out, that solves the problem. It keeps it just down to the max deal figures. Right. Or any products that are confusingly similar. Or confusingly similar. Because we did not, and the implication that we wanted this injunction to cover every single trademark that Mattel owns is ridiculous. It's in the context of the case. All the language relates back to our trademark that we alleged. And we just don't want them to be able to change one letter or use, you know, it's not an action figure, but it's a lunchbox, and use the exact same mark, and then we're back filing a lawsuit, which should be able to enforce the injunction that was negotiated. And it's absolutely clear from the correspondence where we were at and what we turned over to the district court judge. One point I'd like to make, and I think that you raised it, Your Honor, was whether a request for a hearing was made. It was not. It was very clear at the pretrial conference that if we wanted a hearing, we could have asked for it. Judge Wilson prompted the parties, do you want me to conduct a mini-trial? And no one requested it. And it was after the fact that the brief was made by 99 Cent Store where they said, well, if you're going to consider the correspondence, the pre-November 2nd correspondence, then we want the ability to cross-examine witnesses. Well, of course Judge Wilson was going to consider the correspondence. I said that. I had it with me at the hearing, and we talked about it. And he said that, you know, he wanted us to submit our briefs and which version we wanted and everything we were going to put in. At that point was your time to request a hearing. And it wasn't. So you're saying he requested it, but he did it too late? No, he did not request it. I thought you agreed that it was in the brief that if he was going to go beyond X, then he should hold a hearing. This is the reference that he makes. He says, and this is on page 9, and it's Exhibit 7, in the excerpt filed by 99 Cent Store. He says, There is no need for testimony about the meaning and scope of the offer, and such testimony would be improper and inconsistent with the very purpose of Rule 68 to put it into litigation. Further, this is what he's relying upon. If there is to be testimony, 99 Cent should have the opportunity to offer witnesses and to cross-examine the witnesses pro-offered by Mattel. And then he goes on to some other stuff that doesn't really matter. That's what he's saying, that that was his request for hearing. That's not a request for hearing, and it's contrary to what he said to Judge Wilson at the pretrial conference. He says, Judge Wilson says, you've agreed that I'm to fill in the terms. Your Honor, we're fine with that. But one caveat, that we wouldn't want it to be based on the pre-November 2nd proposals that we rejected. He knew that's what we were going to do. And if he wanted a hearing, what would you have a hearing on? I mean, it was correspondence between the attorneys. We were going back and forth trying to negotiate this element, and we just came to an impasse, and we decided to turn it over to the judge to end the case. If there's not anything else. I don't think so. Okay. You have plenty of time left. Thank you. Mr. Price. Thank you, Your Honor. This is them. Actually, Max Steel is about a GI Joe type of adult. These are the guys. It was $9,000 worth of these. What would we want a hearing for? It was Mattel's position that the offer was ambiguous. Our position was that it wasn't ambiguous, that you're supposed to read the Rule 68 offer and effectuate the plain meaning of it. It was Mattel that was saying it was ambiguous, and if they were going to say that it was ambiguous, then we should have a hearing about whether it's ambiguous and whether the two meanings are supported by factual showing or not. She's getting up here making a whole bunch of statements about facts of what I said, what she said. There was no hearing about that. There were no factual findings about that. And I disagree with her about that. Well, let me ask you something. There were no declarations or anything. Your Honor, there were declarations. Beyond the correspondence. There were submitted to the judge. No, each party did submit some declarations. She submitted a declaration identifying her, their supplemental excerpts of records, her declaration with seven, however many. I know. Well, that's just a standard form. Here's the stuff that's attached, kind of declarations. It's not a he said, she said fight. Well, there is a he said, she said fight because at the time I was saying we shouldn't have an injunction at all. The in-house counsel of 99 Cents was at the hearing. Which is clear from reading this. Well, he was saying the in-house counsel of 99 Cents who was at the hearing who spoke before Judge Wilson said we should submit stipulated facts in a joint report and let the judge make a decision based upon stipulated facts in a joint report. And Mattel was saying we'll just submit it and let the judge do whatever he wants to do. And this submission, we'd never seen all the exhibits to the proposed injunction before they were submitted to the court. We'd certainly never agreed to it ahead of time. And part of the reason we were asking for it is because we couldn't understand what their claims were with respect to trade dress and copyrights. Once we saw the exhibits, we don't know what, we still don't know what they are. And now it's even worse because you can't tell what they're claiming their trade dress is. And they don't identify their copyrights. And to go back to your point, plaintiffs, I represent plaintiffs in intellectual property cases. I can confess to being as guilty as anybody else. We always extract a pound of flesh despite whether the dispute is a minor dispute or a big dispute. What's different in this case is the defendant wasn't willing to roll over. So this is a perfect case for the court to take this on and say, Rule 68 is to protect defendants. And the trial judge should effectuate Rule 68 in the way it's supposed to be effectuated, is to give the defendant a fair shake, not just to latch on to some loose language in it and go say, well, it's arguably ambiguous, so I can do anything I want to do. His arguably ambiguous rationale, if he had one because he made no findings, basically writes the operative provision of the Rule 68 offer right off the paper. It doesn't show up anywhere in the injunction. It might as well not have been included in the offer. And that's what we were trying to do was we were saying we won't do this again. That's why we're never going to violate your rights. And if we do, we're right up the street from you. You know where we live. We're a New York Stock Exchange company. You can come find us. You can bring it up. We're your customer. You can send us a nice letter. There's no reason to have a 57-page document, and however you want to characterize it as language and photographs, there's no reason for a 57-page document in this litigation case. And if the rules are going to have any meaning in terms of protecting defendants, then I think the Court needs to send a message to Judge Wilson that you needed to give these guys a fair shake. And I think my time is up, so I'll say thank you very much. Thank you, both of you, for your argument. And the matter just argued will be submitted. And before hearing the next two matters on calendar, the Court will take a brief recess.
judges: B. Fletcher, Rymer, Graber